# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **LONNIE POYDRAS** | **CIVIL ACTION NO. 05-0895-M** |
| **VS.** | **SECTION P** |
| **MADISON PARISH** | **JUDGE JAMES** |
| **DETENTION CENTER, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. §1983) of *pro se* plaintiff Lonnie Poydras, filed *in forma pauperis* on May 12, 2005. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Madison Parish Detention Center (MPDC), Tallulah, Louisiana and in this suit complains of conditions of confinement at that institution. Plaintiff named the MPDC, Warden Shivers, and Corrections Officers Shane Johnson and Captain Jenkins as his defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

In his original complaint, plaintiff complained that he, a non-smoker, has been confined in a dormitory where 55 out of the 59 inmates are smokers. He claimed that he has been forced to endure these conditions since March, 2002. He claimed that his exposure to smoke has caused numerous physical maladies including loss of weight, respiratory problems, and chest pains. He claimed that despite his requests, he has been refused a transfer. [See Doc. 1]

Following initial review of the complaint, Magistrate Judge James D. Kirk ordered

plaintiff to amend his complaint to cure certain noted deficiencies. More specifically, plaintiff was directed to demonstrate his exhaustion of all available administrative remedies as mandated by the provisions of 42 U.S.C. §1997e(a). [Doc. 4]

On August 29, 2005 plaintiff submitted an "Amended Statement of Claim." Among other things, plaintiff alleged that on March 4, 2002, he was placed in the custody of the Louisiana Department of Public Safety and Corrections and incarcerated at the MPDC. He further alleged that one year later he requested transfer to a non-smoking facility but those requests were ignored. Finally, he claimed that all of his Administrative Remedy Grievances were ignored. Although he admitted having received ARP forms when requested, he maintained that his grievances were ignored. He admitted having submitted a grievance to the MPDC Warden, but he claimed that this was also ignored. [Doc. 5]

## **LAW AND ANALYSIS**

Exhaustion of Administrative Remedies

The Civil Rights of Institutionalized Persons Act, codified at 42 U.S.C. §1997e, was amended on April 26, 1996 by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion of available administrative remedies mandatory in prison conditions cases.

Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies – <u>No action</u> shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted.</u> (Emphasis supplied)

This is a prison condition case, exactly the type of case which can best be resolved by

2

corrections officials without resort to judicial action. With respect to plaintiff's claims, the pleadings, taken in the light most favorable to the plaintiff, establish that plaintiff failed to exhaust all available administrative remedies before filing this lawsuit as required by 42 U.S.C. §1997e(a).

Plaintiff claimed that he filed his first grievance in March, 2003, approximately one year after he was placed in the custody of the Louisiana Department of Public Safety and Corrections. Plaintiff directed this ARP to Major Shane Johnson at MPDC and requested transfer to a non-smoking facility. Johnson allegedly advised plaintiff to pursue this request with Captain Jenkins. Apparently plaintiff did as he was instructed, but his request was denied.

Thereafter, on some unspecified date, plaintiff submitted an appeal to Warden Shivers. He claimed that this appeal was ignored. He then filed this complaint. [See Doc. 1-1, page 2]

The undersigned will assume for the purposes of this Report that plaintiff timely submitted Administrative Remedies Procedure grievances to the MPDC authorities. The undersigned will further assume that plaintiff received negative responses to his requests from Major Johnson and Captain Jenkins. The undersigned will further assume (for the purpose of this Report) that plaintiff's appeal to Warden Shivers was ignored and that he did not receive a response. Those facts, however, are not dispositive of the issue of whether plaintiff exhausted all available administrative remedies prior to filing suit.

As noted above, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections and was in their legal custody from March, 2002 through the present. Administrative remedies procedures have been adopted by the Louisiana Department of Public Safety and Corrections, sheriff's maintaining parish jails or correctional centers, and

private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq*.; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857.

In relevant part, the regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provide:

> G. Process
>
> 1. First Step (Time Limit 40 days)
>
> a. <u>The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought</u> ... This letter should be written to the warden within 30 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP Screening Officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. <u>The warden shall respond to the inmate within 40 days from the date the request is received at the First Step.</u>
>
> b. For inmates wishing to continue to the Second Step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each Step of the process.
>
> 2. Second Step (Time Limit 45 days)
>
> a. <u>An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision</u>. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden.

*   *   *

> 4. Deadlines and Time Limits
>
> a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process</u>. Time limits begin on the date the request is assigned to a staff member for the First Step response.

Giving plaintiff the benefit of every doubt, it appears that he did not exhaust the final administrative remedy that was available to him by filing an appeal of the Warden's decision to the Secretary of the Department of Public Safety and Corrections. Even if Warden Shivers ignored plaintiff's grievance (as plaintiff has alleged), plaintiff was required under the regulations to assume that his requests had been denied and to pursue the Second Step remedy.

Under current law, plaintiff must have <u>fully</u> exhausted the administrative remedy procedure before proceeding herein. The statute provides for no exceptions.[1] The statute precludes any further action on his claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."*)*; *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative

---

[1] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Thus, since it does not appear that plaintiff filed an appeal of his administrative remedies procedure grievance with the Secretary of the Louisiana Department of Public Safety and Corrections, his complaint is subject to dismissal on that basis.

Accordingly**,**

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED** for failure to exhaust all available administrative remedies prior to filing suit as mandated by the provisions of 42 U.S.C. §1997e(a).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

**6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this <u>14th</u> day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE